**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
────────────────────────────────

DANIEL HYERS,

                Plaintiff,

v.                                                9:24-cv-00962 (AMN/CFH)

DANIEL F. MARTUSCELLO, III, *in his official
capacity as Commissioner of the Department of
Corrections and Community Supervision
("DOCCS")*, ANNE MARIE MCGRATH, *in her
official capacity as Deputy Commissioner of
DOCCS*, & DOUG BOTSFORD, *in his official
capacity as the head of Classification and Movement
of DOCCS*,

                Defendants.
────────────────────────────────

**APPEARANCES:**                             **OF COUNSEL:**

**RUPP PFALZGRAF LLC**             **R. ANTHONY RUPP, III, ESQ.**
1600 Liberty Building                **PHILLIP A. OSWALD, ESQ.**
424 Main Street
Buffalo, NY 14202

227 Washington Street – Suite 1c
Saratoga Springs, NY 12866
*Attorneys for Plaintiff*

**HON. LETITIA JAMES**                **RYAN W. HICKEY, ESQ.**
New York State Attorney General      Assistant Attorney General
The Capitol
Albany, NY 12224
*Attorney for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.       INTRODUCTION

On August 5, 2024, Plaintiff Daniel Hyers commenced this action against Defendants Daniel F. Martuscello, III, in his official capacity as Commissioner of the Department of Corrections and Community Supervision ("DOCCS"), Anne Marie McGrath, in her official capacity as Deputy Commissioner of DOCCS, and Doug Botsford, in his official capacity as the head of Classification and Movement of DOCCS.  *See* Dkt. No. 1 ("Complaint").[1]  Simultaneously, Plaintiff filed an emergency motion for a preliminary injunction and a temporary restraining order by notice of motion seeking an order that "restrain[s] Defendants, their agents, employees, and those acting in concert with them from transferring Plaintiff to any facility without adequate protective custody measures or placing him in the general population."  Dkt. No. 2-1 ("Motion") at 3.[2]  The Amended Complaint requests more detailed relief, specifically seeking an injunction ordering Defendants to: "(i) [i]mmediately place Plaintiff in mandated long-term protective custody; (ii) [d]evelop and implement a comprehensive safety plan for Plaintiff; (iii) [e]nsure that Plaintiff is not transported or housed with inmates on his no-contact list; and (iv) [e]nsure that Plaintiff is not housed near inmates affiliated with the Bloods Gang or [who] pose threats to Plaintiff."  Dkt. No. 5 at 8.

On August 6, 2024, the Court granted in part Plaintiff's request for a temporary restraining order ("TRO").  Defendants responded to Plaintiff's Motion on August 12, 2024, *see* Dkt. No. 14, and Plaintiff submitted a reply on August 14, 2024, *see* Dkt. No. 15.  Thereafter, the Court ordered

---

[1] The Complaint initially omitted Defendant Botsford, instead naming a John or Jane Doe Defendant, given that Plaintiff had not yet ascertained Defendant Botsford's identity.  Upon learning Defendant Botsford's identity, Plaintiff amended his complaint on August 8, 2024.  *See* Dkt. No. 5 ("Amended Complaint").

[2] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

the Parties to appear in-person for a hearing on Plaintiff's Motion, which took place on August 16, 2024, before the undersigned.  *See* Dkt. No. 16.  Following the August 16 hearing, the Parties were directed to continue their ongoing efforts to resolve their differences relating to Plaintiff's Motion, and to submit a status report to the Court regarding those efforts.  *See* Dkt. No. 19.  On September 4, 2024, the Parties submitted a status report informing the Court that they were unable to fully resolve their differences.  *See* Dkt. No. 22.  The Court requested further briefing from the Parties on September 5, 2024, to understand the nature of the differences that remained.  *See* Dkt. No. 23. Accordingly, Plaintiff submitted a letter brief on September 5, 2024, *see* Dkt. No. 24, and Defendant filed a response on September 6, 2024, *see* Dkt. No. 25.

For the reasons set forth herein, the Court grants in part and denies in part Plaintiff's Motion and vacates the TRO.

## II.     BACKGROUND[3]

Several years prior to the filing of this action, Plaintiff provided testimony in a separate litigation against members of the Bloods Gang pertaining to the gang's supposed illegal activities within the prison system.  *See* Dkt. No. 5 at ¶ 9.  Subsequently, Plaintiff alleges that he has experienced varying levels of verbal harassment and physical harm by members of the Bloods Gang while housed in the general population of various DOCCS facilities.  *Id.* at ¶¶ 10, 12 ("Plaintiff has been subjected to ongoing verbal threats, destruction of personal property, and

---

[3] The following facts are taken from the Amended Complaint, as well as the affidavits and other materials submitted in support of Plaintiff's Motion and are assumed true for the limited purpose of deciding Plaintiff's Motion.  *See, e.g.*, *Sullivan v. Cossette*, No. 3:13-cv-621, 2013 WL 3965125, at *1 (D. Conn. Aug. 2, 2013).

physical violence when not in protective custody.").[4]  As one example, "while incarcerated a few years ago," Plaintiff was stabbed by a Bloods Gang member.  *Id.* at ¶ 9.

As a result, on March 6, 2024, upon learning DOCCS intended to transfer Plaintiff from his current placement at Wende Correctional Facility, Plaintiff's counsel sent a letter to Cathy Y. Sheehan (Deputy Commissioner and Counsel for DOCCS), and Darren T. Miller (Deputy Commissioner and Chief of the Office of Special Investigations ("OSI")), requesting that Plaintiff be placed in protective custody wherever he is transferred, and asserting that any time Plaintiff is placed in the general population, his safety and well-being is jeopardized.  *See id.* at ¶¶ 14-15 & Ex. A.  Defendant McGrath responded to the March 6 letter on behalf of DOCCS on June 19, 2024, stating that Plaintiff had already been transferred to Eastern Correctional Facility and that such facility was "capable of meeting [Plaintiff's] safety and security needs."  *Id.* at ¶ 16 & Ex. B.

However, while at Eastern Correctional Facility, on July 13, 2024, Plaintiff was attacked by two individuals affiliated with the Bloods Gang while in the general population; Plaintiff was pushed down a flight of stairs, slashed with a weapon, kicked, and punched, suffering serious injuries including a slashed face and fractured rib.  *See id.* at ¶¶ 22-24 & Ex. C, at 3-4.  Plaintiff contends this was due, at least in part, to the fact that Eastern Correctional Facility lacks a dedicated protective custody unit, allows Bloods Gang members to intermingle with other inmates, lacks adequate surveillance measures, and permits all prisoners to intermingle with one another at the same time.  *See id.* at ¶¶ 18-21.

In response to the second attack, on July 16, 2024, Plaintiff's counsel wrote again to DOCCS, this time sending letters to Eastern Correctional Facility, DOCCS Office of Deputy

---

[4] Plaintiff has a tattoo that is "easily recognizable," which Plaintiff contends makes him an easy target for attack by Bloods Gang members.  Dkt. No. 5 at ¶ 49.

Commissioner & Counsel, and OSI, demanding that Plaintiff be placed in long-term protective custody and warning of the likelihood that Plaintiff would be attacked again if he continued to be placed in the general population. *See id.* at ¶ 29 & Ex. C. Plaintiff's counsel additionally called DOCCS, Eastern Correctional Facility, and OSI on July 23, 2024, and filed an OSI complaint. *See id.* at ¶¶ 30-31. It does not appear Plaintiff's counsel received a formal response to the July letters or phone calls. Instead, Plaintiff was subsequently relocated to Coxsackie Correctional Facility, which also lacks a dedicated protective custody unit and houses members of the Bloods Gang. *See id.* at ¶¶ 32-34. Indeed, during this relocation process, Plaintiff was placed on a bus with Bloods Gang members and attacked a third time, when two inmates "jumped on Plaintiff." *Id.* at ¶¶ 35-37.

Following the attack that occurred during the transport, Plaintiff was held in a medical bay at Coxsackie Correctional Facility. *See id.* at ¶ 38. Plaintiff was then transferred again to Great Meadow Correctional Facility on August 2, 2024, where he was housed in the reception unit in "involuntary protective custody." Dkt. No. 14 at 4-5. At some point following this Court's August 16 hearing on Plaintiff's Motion, Plaintiff was transferred from Great Meadow Correctional Facility to Elmira Correctional Facility, where he remains in "protective custody." Dkt. No. 20.

## III.   STANDARD OF REVIEW

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005). Further, a preliminary

injunction is "never awarded as of right," *Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 200 (N.D.N.Y. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)), and the decision to grant such relief "rests in the sound discretion of the district court[.]" *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).  In any event, preliminary relief should be "narrowly tailored to fit specific legal violations . . . [and] should not impose unnecessary burdens on lawful activity." *Waldman Pub. Corp. v. Landoll, Inc.,* 43 F.3d 775, 785 (2d Cir. 1994); *see also Bhd. of Locomotive Eng'rs v. Missouri-Kansas-Texas R. Co.*, 363 U.S. 528, 532 (1960) ("it is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all whose interests the injunction may affect."); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane § 2947, at 123-24 ("Implicit in the court's discretion under Rule 65(a) is that the court need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case or may enter conditional preliminary relief.").

A party seeking preliminary injunctive relief must establish: "(1) a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff[s]'[] favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (internal quotation marks and citation omitted).  While a "[p]rohibitory injunction[] [that] maintain[s] the status quo pending resolution of the case" requires an applicant to show "a likelihood of success on the merits," *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018), a "mandatory injunction" that "alter[s] the status quo by commanding some positive act," requires an applicant to show "a clear or substantial likelihood of success on the merits" rather

than simply a likelihood of success on the merits. *N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth.*, 684 F.3d 286, 294 (2d Cir. 2012). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted).

## IV.   DISCUSSION

The Court finds, after ample review of the Amended Complaint, Plaintiff's Motion, and subsequent submissions, as well as after hearing from the parties on August 16, that Plaintiff has met his burden to establish that a preliminary injunction is warranted.

### A.  Likelihood of Success

The Eighth Amendment places a burden on prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). That burden includes an obligation to protect prisoners from violence at the hands of other prisoners. *See Farmer*, 511 U.S. at 833; *see also Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991). To state a viable Eighth Amendment claim, Plaintiff must establish both: (1) a deprivation of a constitutional right that is sufficiently serious; and (2) that the defendants acted with a sufficiently culpable state of mind. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Lewis v. Zon*, 920 F. Supp. 2d 379, 388 (W.D.N.Y. 2013) (citing *Wilson*, 501 U.S. at 299). In this context, the second prong is satisfied by a showing of deliberate indifference to the inmate's health or safety. *Id.* at 302-03.

### 1.  *Whether the Deprivation is Sufficiently Serious*

A deprivation is considered sufficiently serious when an inmate is incarcerated under conditions imposing a substantial risk of serious harm. *Farmer*, 511 U.S. at 834. This includes a

deprivation of basic human needs.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  There is no "static test" to determine whether a deprivation is sufficiently serious; instead, "the conditions themselves must be evaluated in light of contemporary standards of decency."  *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) (citing *Rhodes*, 452 U.S. at 346).  Of course, conditions that are "restrictive and even harsh" are "part of the penalty that criminal offenders pay for their offenses against society" and thus not unconstitutional.  *Rhodes*, 452 U.S. at 347.  Nevertheless, the Second Circuit has "held that prisoners may not be deprived of their basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health."  *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (citation and internal quotation marks omitted).

In this regard, Plaintiff contends that he was deprived of a reasonably safe living environment when he was placed in the general population of DOCCS facilities, causing Plaintiff to intermingle with members of the Bloods Gang who intended to, and did, harm Plaintiff.  *See* Dkt. No. 5 at ¶¶ 18-24, 32-37 & Ex. C, at 3-4 (stating that the July 2024 attack took place while Plaintiff was in Eastern Correctional Facility's general population, despite Defendants' knowledge that Plaintiff was in protective custody at previous facilities following harassment by the Bloods Gang).[5]  The Court finds that, based on the undisputed history of physical attacks on Plaintiff prior to July 2024, Plaintiff has established a likelihood that he will succeed in showing that he faced an unreasonable risk of serious damage to his health and safety based on, at least, the conditions in which he was housed at Eastern Correctional Facility.  The Court thus concludes that Plaintiff is likely to establish a deprivation of a right that was sufficiently serious.

___

[5] Additionally, at the August 16 hearing on Plaintiff's Motion, counsel for Defendants conveyed his understanding that Plaintiff was in the general population at Eastern Correctional Facility when the July 2024 attack occurred.

2. *Deliberate Indifference*

Since direct evidence of prisoner officials' knowledge will rarely be available, deliberate indifference may be established by circumstantial evidence. *See Matthews v. Armitage*, 36 F. Supp. 2d 121, 125 (N.D.N.Y. 1999) (citing *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998)). Plaintiff need not demonstrate that he lodged a specific complaint that he was at risk of attack from a certain inmate. *Farmer*, 511 U.S. at 848 ("failure to give advance notice is not dispositive"). Instead, the controlling question is whether Defendants were aware of a substantial risk of harm to Plaintiff. *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 621 (2d Cir. 1996). The failure to remove an incarcerated individual from the general prison population to protect the individual from physical harm states a claim for deliberate indifference to the individual's safety in violation of the Eighth Amendment. *See Moore v. Goord*, 7 Fed. Appx. 2, 3 (2d Cir. 2001) (vacating district court's decision dismissing complaint for failure to state a claim and remanding where incarcerated plaintiff alleged defendants DOCCS prison officials and guards had exhibited deliberate indifference to plaintiff's safety by failing to protect him from assault by other incarcerated individuals, and then waited 11 days after the assault before removing plaintiff from the general prison population to protective custody).

Here, following a stabbing and additional verbal and physical violence by Bloods Gang members, Plaintiff's counsel sent a letter to DOCCS personnel on March 6, 2024, notifying DOCCS of the ongoing violence and requesting that Plaintiff be placed in protective custody in the event of a facility transfer. *See* Dkt. No. 5 Ex. A. Defendant McGrath confirmed receipt of such letter on June 19, 2024, when she formally responded, stating that Plaintiff had already been moved to Eastern Correctional Facility, which was "capable of meeting [his] safety and security needs." *Id.* Ex. B. However, contrary to that assertion, Bloods Gang members gained access to

Plaintiff while he was in the facility's general population, and violently attacked him again on July 13, 2024, this time by pushing Plaintiff down a flight of stairs, slashing him with a weapon, as well as punching and kicking Plaintiff resulting in Plaintiff suffering a slashed face and fractured rib, among other injuries.  *See id.* at ¶¶ 22-24.  Plaintiff's counsel then wrote to DOCCS personnel a second time, called DOCCS personnel, and filed an OSI complaint, on or around July 16, 2024. *See id.* at ¶¶ 29-31 & Ex. C.  Instead of responding, DOCCS made the decision to relocate Plaintiff to Coxsackie Correctional Facility, and, during that transport, Plaintiff was placed on a bus with Bloods Gang affiliates and subsequently "jumped."  *Id.* at ¶¶ 32-37.

The failure to place Plaintiff in a reasonably safe living environment following notification that Plaintiff was facing repeated physical violence is concerning to the Court.  At the very least, the June 2024 correspondence establishes that DOCCS personnel (including, at least, Defendant McGrath) were on notice of an ongoing risk to Plaintiff's health and safety.[6]  Yet, despite that notice, Plaintiff was still placed in an unsafe environment(s) (*e.g.*, Eastern Correctional Facility's general population) and was seriously injured as a result.  Therefore, the Court concludes that Plaintiff is likely to succeed in establishing that Defendants acted with deliberate indifference to Plaintiff's safety.

Based on the foregoing, Plaintiff has met his burden in establishing a likelihood of success on the merits.[7]

---

[6] While Defendants Martuscello and Botsford were not included in the June 2024 correspondence, Defendant McGrath's knowledge of the risks to Plaintiff's health and safety is sufficient for purposes of affording Plaintiff preliminary injunctive relief.  In ruling on Plaintiff's Motion, the Court takes no position on the knowledge Defendants Martuscello or Botsford may have had of Plaintiff's health and safety history before the subsequent attacks.

[7] The Court also notes that, at the very least, Plaintiff has raised sufficiently serious questions going to the merits of his Eighth Amendment claim to make them a fair ground for litigation and, as discussed in more detail *infra*, the balance of hardships tips in Plaintiff's favor.

### B.  Irreparable Harm

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983).  There are two essential components to irreparable harm.  First, "[i]t is well established that an irreparable injury is an injury that is not remote or speculative but actual and imminent[.]" *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (quotation omitted).  Second, irreparable harm is an "injury for which a monetary award cannot be adequate compensation." *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).  The movant bears the burden of proof and persuasion to show that it is entitled to a preliminary injunction because irreparable harm is likely.  *See JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 Fed. Appx. 31, 34 (2d Cir. 2015) ("the 'burden of proof and persuasion rests squarely' on the party moving for a preliminary injunction to show that irreparable harm is likely") (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)); *JSG Trading*, 917 F.2d at 79 (with respect to irreparable harm, "[l]ikelihood sets, of course, a higher standard than 'possibility.'").  To satisfy that burden, "[p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations. Ltd.*, 481 F.3d at 66 (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)).  "[A] finding of irreparable harm cannot be based solely upon past conduct." *See Haden v. Hellinger*, No. 9:14-CV-0318 (GLS), 2016 WL 589703, at *1 (N.D.N.Y. Feb. 11, 2016).

Nonetheless, allegations of infringement upon constitutional rights generally constitute irreparable injury.  *See Elrod v. Burns*, 427 U.S. 347, 373-374 (1976); *see also Paulsen v. County*

*of Nassau*, 925 F.2d 65, 68 (2d Cir.1991); *see also* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948, at 440 (1973) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary").  "[A]n allegation of a violation of a constitutional right under the Eight[h] Amendment challenging conditions of confinement in a prison creates a presumption of irreparable harm potentially justifying equitable relief." *Zolnowski v. Cnty. of Erie*, 944 F. Supp. 1096, 1109 (W.D.N.Y. 1996) (citing cases).

First, as discussed *supra*, Plaintiff is likely to succeed in establishing that he suffered a deprivation of his Eighth Amendment rights.  Therefore, as a matter of law, Plaintiff has satisfied his burden in showing a likelihood of irreparable harm absent some form of injunctive relief.

Moreover, as a factual matter, Plaintiff alleges that Defendants demonstrated deliberate indifference to a substantial risk of serious harm to Plaintiff when they repeatedly placed him or attempted to place him in the general population of DOCCS facilities in the proximity of Bloods Gang members.  *See* Dkt. No. 5, Ex. C at 3-4.  The actions or inactions of Defendants, Plaintiff contends, "demonstrate a pattern of negligence, callousness, and willful disregard for Plaintiff's safety, in violation of his Eighth Amendment rights."  Dkt. No. 5 at ¶ 52.  While Defendants argue that Plaintiff's claims of injury are speculative and rely "solely on the hypothetical scenario in which he is removed from his current housing placement and placed into general population," Dkt. No. 14 at 8, they do not cite any controlling or persuasive authority that would lead this Court to ignore the presumption of irreparable harm afforded to plaintiffs bringing Eighth Amendment claims.  Indeed, the actual or imminent nature of Plaintiff's harm is belied by the August 16 hearing on Plaintiff's Motion, where counsel for Defendants was unable to represent that Plaintiff would remain in protective custody during the pendency of this litigation.  Instead, Defendants took the

position that DOCCS would prefer to have continued flexibility in determining whether and when Plaintiff should be placed in the general population. This preference to leave open the possibility that Plaintiff could be placed back in the general population (where he has already been seriously injured) was reiterated in Defendants' most recent submission to the Court. *See* Dkt. No. 25 (noting only a willingness to "have [DOCCS] Central Office review and approve any contemplated transfer of Plaintiff from protective custody to general population.").[8] Thus, to date, the Court has not received assurance that Plaintiff will not be placed in the general population of a DOCCS facility while the issues presented are adjudicated. That lack of adequate assurance, the history of violence experienced by Plaintiff, as well as DOCCS's previous decision to place Plaintiff in the general population notwithstanding that history of violence, collectively lead the Court to conclude that Plaintiff has established a likelihood that he will suffer irreparable harm that is actual or imminent absent some form of limited injunctive relief.

### C. Balance of Hardships & Public Interest

"Where the Government is the opposing party, the final two factors in the analysis—the balance of the equities and the public interest—merge." *Coronel v. Decker*, 449 F. Supp. 3d 274, 287 (S.D.N.Y. 2020). And when Defendants are sued in their official capacity, the motion becomes one effectively brought against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (recognizing that official-capacity suits are treated, "in all respects other than name," as suits against the governmental entity); *see also Hernandez Aguilar v. Decker*, 482 F. Supp. 3d 139, 150 (S.D.N.Y. 2020) (merging the two factors in a suit against government employees sued in

---

[8] Despite this reiteration, Defendants have failed to articulate to the Court with any specificity the nature of the burden, if any, Defendants may experience if enjoined from moving Plaintiff into the general population of a DOCCS facility.

their official capacities); *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 448 (D. Conn. 2020) (same).

"The public interest generally supports a grant of preliminary injunctive relief where [] a plaintiff has demonstrated a substantial likelihood of success on the merits and a strong showing of irreparable harm.  This interest is particularly strong where the rights to be vindicated are constitutional in nature."  *A.T. by & through Tillman v. Harder*, 298 F. Supp. 3d 391, 417 (N.D.N.Y. 2018) (DNH); *A.H. by & through Hester v. French*, 985 F.3d 165, 184 (2d Cir. 2021) ("the public interest is well served by the correction of this constitutional harm"); *Coronel*, 449 F. Supp. 3d at 287 ("the public interest is best served by ensuring the constitutional rights of persons within the United States are upheld.").

Nevertheless, corrections departments have an inherent interest in maintaining "institutional order and security" and the proper "allocation of prison resources," *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 350, 352 (1987), which includes the authority to transfer prisoners for the purpose of maintaining prison safety.  *See McKune v. Lile*, 536 U.S. 24, 26 (2002) ("decision where to house inmates is at the core of prison administrators' expertise."); *see also United States v. Kanagbou*, 726 Fed. Appx. 21, 25 (2d Cir. 2018) ("[I]t is well established that the district court does not control how the Executive Branch carries out a defendant's sentence." (citing 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."))); *cf. Agostini v. Backus*, No. 14-CV-6188, 2015 WL 1579324, at *3 (W.D.N.Y. Apr. 9, 2015) (affording corrections office deference regarding inmate placement where Plaintiff had "not made a convincing showing that he [was] presently in danger" at a particular facility).

The Court is cognizant of the substantial deference that DOCCS must be afforded in making decisions regarding prisoner safety and the housing of inmates.  In fashioning the limited

relief set forth below, the Court carefully balances that deference with the immediate concern that Plaintiff's health and safety is at serious risk, especially in light of the history of violence outlined herein, as well as the fact that Plaintiff's cause of action is constitutional in nature.  Unlike the progeny upon which Defendant's opposition relies, as set forth *supra*, under the specific circumstances of this case, Plaintiff has made a strong showing that he is at risk of ongoing danger.  Thus, on these facts, while the Court declines to grant the portion of Plaintiff's request detailed in the Amended Complaint, which seeks mandatory injunctive relief—*e.g.*, a requirement that Defendant place Plaintiff in long-term protective custody or develop a safety plan specifically for Plaintiff—it will grant a limited portion of Plaintiff's request detailed in the Motion which seeks prohibitory relief.  In that regard, Defendant is hereby barred from removing Plaintiff from protective custody status while this action continues.

## V.       CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Motion for a Preliminary Injunction, Dkt. No. 2, is **GRANTED IN PART** and **DENIED IN PART**; and the Court further

**ORDERS** that, pending further order of this Court, Defendants shall be immediately **ENJOINED** from taking the following actions, alone or in concert with any person or entity: **removing Plaintiff from protective custody status**.  For avoidance of doubt, this Order means **Defendant is prohibited from placing Plaintiff into the general population of any DOCCS facility** throughout the remainder of this litigation; and the Court further

**ORDERS** that the temporary restraining order, Dkt. No. 4, is **VACATED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 6, 2024
     Albany, New York

Anne M. Nardacci
U.S. District Judge