**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DANIEL HYERS,

                         Plaintiff,

v.                                           9:24-cv-00962 (AMN/CFH)

DANIEL F. MARTUSCELLO, III, *in his official capacity as Commissioner of the Department of Corrections and Community Supervision ("DOCCS")*, ANNE MARIE MCGRATH, *in her official capacity as Deputy Commissioner of DOCCS*, & DOUG BOTSFORD, *in his official capacity as the head of Classification and Movement of DOCCS*,

                         Defendants.

---

**APPEARANCES:**                                     **OF COUNSEL:**

**RUPP PFALZGRAF LLC**                     **R. ANTHONY RUPP, III, ESQ.**
1600 Liberty Building                         **YOUNG WOO KIM, ESQ.**
424 Main Street                                     **PHILLIP A. OSWALD, ESQ.**
Buffalo, NY 14202                              **CHAD A. DAVENPORT, ESQ.**

227 Washington Street – Suite 1c
Saratoga Springs, NY 12866
*Attorneys for Plaintiff*

**HON. LETITIA JAMES**                        **RYAN W. HICKEY, ESQ.**
New York State Attorney General         **LAUREN ROSE ROSENBERG,**
The Capitol                                        **ESQ.**
Albany, NY 12224                              Assistant Attorneys General
*Attorney for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

1

I.      **INTRODUCTION**

On August 5, 2024, Plaintiff Daniel Hyers filed a Complaint pursuant to 42 U.S.C. § 1983 against Defendants Daniel F. Martuscello, III, in his official capacity as Commissioner of the Department of Corrections and Community Supervision ("DOCCS"), and Anne Marie McGrath, in her official capacity as Deputy Commissioner of DOCCS, for Eighth Amendment deliberate indifference violations alleged to have occurred during Plaintiff's incarceration at various DOCCS facilities.  *See* Dkt. No. 1.[1]  Plaintiff simultaneously filed a motion for injunctive relief, *see* Dkt. No. 2, and, on August 6, 2024, the Court issued a temporary restraining order, *see* Dkt. No. 4.  On August 16, 2024, the Court held an in-person hearing regarding whether to convert the temporary restraining order to a preliminary injunction.  Based on that August 16 hearing, as well as supplemental briefing by the Parties, the Court issued a preliminary injunction enjoining Defendants from removing Plaintiff from DOCCS protective custody status and prohibiting Defendants from placing Plaintiff into the general population of any DOCCS facility throughout the remainder of the litigation.  *See* Dkt. No. 26.  Defendants answered the Amended Complaint on October 16, 2024, *see* Dkt. No. 31, and the case proceeded to discovery.

On January 21, 2025, counsel for Plaintiff submitted an emergency omnibus motion pursuant to Fed. R. Civ. P. 25(a)(1), 53, and 65(b), asserting that, on January 17, 2025, Plaintiff was killed while housed in the Mental Health Unit at Elmira Correctional Facility.  *See* Dkt. No. 39 ("Emergency Motion"); *see also* Dkt No. 39-1 at ¶¶ 4, 9.  The Emergency Motion sought temporary injunctive relief preventing irreparable harm arising from the potential destruction or alteration of evidence, as well as an order (1) appointing a special master to oversee the

---

[1] On August 8, 2024, Plaintiff filed an amended complaint, adding Doug Botsford, in his capacity as the Head of Classification and Movement of DOCCS, as a Defendant.  *See* Dkt. No. 5 ("Amended Complaint").

preservation of evidence and conduct an independent investigation of the circumstances surrounding Mr. Hyers' death; and (2) allowing for the substitution of Deborah Nagel as the anticipated administratrix of the estate of Plaintiff Daniel Hyers. *See* Dkt. No. 39 at 2; *see also* Dkt. No. 39-2 at 5, 7-8.[2]

On January 22, 2025, having found that Plaintiff had satisfied the requirements of Rule 65 of the Federal Rules of Civil Procedure, as well as Northern District of New York Local Rule 65.1, the Court granted Plaintiff's request for a temporary restraining order and directed Defendants to immediately take all steps necessary to preserve all relevant evidence until otherwise ordered but no later than February 5, 2025. *See* Dkt. No. 41 (the "TRO"). On January 24, 2025, Defendants submitted an opposition to the Emergency Motion, *see* Dkt. No. 42, and on January 29, 2025, Plaintiff filed a reply in further support of the Emergency Motion, *see* Dkt. No. 43. On February 4, 2025, the undersigned held an in-person hearing with the Parties to determine whether any further injunctive relief sought in the Emergency Motion was warranted. *See* docket sheet.

For the reasons set forth herein, the Court denies the Emergency Motion insofar as it seeks further injunctive relief and vacates the TRO.

## II.     BACKGROUND

The Court assumes the Parties' familiarity with the factual background of this case, as detailed in the Court's September 6, 2024 Memorandum-Decision and Order. *See* Dkt. No. 26 at 3-5. In short, the Amended Complaint alleges that Plaintiff Daniel Hyers' Eighth Amendment rights were violated when Defendants repeatedly placed him in, or attempted to place him in, the general population of DOCCS facilities or in proximity to Blood Gang members, despite numerous

---

[2] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

complaints by Plaintiff and multiple attacks on Plaintiff's life by individuals affiliated with the Bloods. *See generally* Dkt. No. 5.

The instant Emergency Motion alleges that, approximately four months after this Court enjoined Defendants from removing Plaintiff from DOCCS protective custody status or otherwise placing Plaintiff in the general population of any DOCCS facility, *see* Dkt. No. 26 at 15, Plaintiff was killed at Elmira Correctional Facility, *see* Dkt. No. 39-1 at ¶¶ 4, 9. According to Plaintiff's counsel, the circumstances surrounding Plaintiff's death "suggest foul play and a failure by DOCCS to comply with the Court's orders." Dkt. No. 39-2 at 2. Specifically, prior to his death, Plaintiff allegedly reported to his counsel that (1) his legal mail was being intercepted, tampered with, or destroyed; (2) corrections officers were threatening his life; and (3) correctional staff opened Plaintiff's cell to allow other inmates to steal and ransack his property. *See* Dkt. No. 39-1 at ¶¶ 6, 9-10. Additionally, Plaintiff's counsel avers in the Emergency Motion that a nurse at Coxsackie Correctional Facility reported to them that nearly half of Plaintiff's medical records were missing, including portions reflecting medical treatment denied to him, and that evidence exists to suggest that a former corrections sergeant recently attempted to blackmail Plaintiff's mother. *Id.* at ¶¶ 12-13. In their opposition to the Emergency Motion, Defendants deny the allegations, characterizing them as "baseless, grandiose statements . . . pure speculation . . . [and] pure conjecture." Dkt. No. 42 at 4, 7. They argue that a preservation order is not necessary based on their ongoing adherence to their already-existing preservation obligations, that the circumstances of this case do not warrant the appointment of a special master, and that Plaintiff's counsel's motion to substitute Plaintiff's mother as a proper party is procedurally premature. *Id.* at 2-9.

4

At the February 4 hearing, Plaintiff's counsel reiterated the concerns described in their papers regarding Defendants' preservation of relevant evidence, and their belief that neutral oversight is necessary to ensure compliance with future discovery obligations. Plaintiff's counsel, however, conceded that they had not yet sought to confer with Defendants' counsel with respect to Defendants' preservation efforts and, further, had no indication that Defendants were engaged in spoliation of evidence. Counsel for Defendants assured the Court that they had transmitted the January 22 TRO to DOCCS personnel and that DOCCS' Office of Special Investigations ("OSI") had preserved evidence in connection with its ongoing investigation into Mr. Hyers' death.[3] Notably, however, defense counsel was unable to provide any additional information outside of what is contained in the Declaration of Christian Nunez, Director of Operations for DOCCS OSI, submitted alongside Defendants' opposition, with respect to the preservation of evidence. When asked specifically about what efforts Defendants had taken with regard to the preservation of video surveillance footage, an issue which was conspicuously not addressed in the Nunez Declaration, defense counsel responded that they were not aware of the status of those efforts and could not inform the Court whether such evidence even existed. In response, the Court expressed serious concern with respect to defense counsel's lack of knowledge and their failure to investigate even the most preliminary facts relevant to the Emergency Motion prior to attending the hearing. The Court admonished defense counsel that they are required to abide by their preservation and discovery obligations notwithstanding the existence of the OSI investigation.

---

[3] The Court understands from Defendants' opposition papers and statements made during the February 4 hearing that multiple other investigations into Mr. Hyers' death are ongoing, including through the New York State Police and the New York State Office of the Attorney General. *See* Dkt. No. 41-2 at ¶ 5.

**III.     STANDARD OF REVIEW**

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original).  Such relief is "never awarded as of right," *Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 200 (N.D.N.Y. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)), and the decision to grant such relief "rests in the sound discretion of the district court[,]" *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

A party seeking preliminary injunctive relief must establish:

> (1) a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff[s]'[] favor; and (4) that the public interest would not be disserved by the issuance of an injunction."

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (internal quotation marks and citation omitted).  While a "[p]rohibitory injunction[] [that] maintain[s] the status quo pending resolution of the case" requires an applicant to show "a likelihood of success on the merits," *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018), a "mandatory injunction" that "alter[s] the status quo by commanding some positive act," requires an applicant to show "a clear or substantial likelihood of success on the merits" rather than simply a likelihood of success on the merits. *N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).  "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted).

6

## IV. DISCUSSION

### A. The Emergency Motion

The Court finds, after ample review of the Amended Complaint, the Emergency Motion, and associated submissions, as well as after hearing from the Parties on February 4, 2025, that no further injunctive relief is warranted at this juncture. While the Court has previously determined that the allegations outlined in the Amended Complaint are sufficient to establish irreparable harm and a likelihood of success on the merits, *see* Dkt. No. 26 at 7-13, it finds that, on balance, the injunctive relief sought in the Emergency Motion is not narrowly tailored to the irreparable harm alleged and is not otherwise necessary to maintain the status quo. *See, e.g.*, *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994) (emergency relief should be "narrowly tailored to fit specific legal violations . . . [and] should not impose unnecessary burdens on lawful activity."); *see also Bhd. of Locomotive Eng'rs v. Missouri-Kansas-Texas R. Co.*, 363 U.S. 528, 532 (1960) ("it is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all whose interests the injunction may affect."); *Transamerica Rental Fin. Corp. v. The Rental Experts*, 790 F. Supp. 378, 382 (D.Conn.1992) ("In fashioning an injunction, the court should make the relief as narrow as required to attain the desired result.").

The Court addresses each of Plaintiff's three requests in turn.

#### i. Request for Preservation Order

First, the Emergency Motion seeks an order compelling DOCCS to take all steps to preserve all relevant evidence, including but not limited to ten specific categories of evidence. *See* Dkt. No. 39-2 at 7-8.

Under federal common law and numerous procedural rules governing discovery, litigants have a "duty to preserve documents and property that could potentially serve as evidence in a lawsuit." *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 21 (S.D.N.Y. 2010), *report-recommendation*

7

*adopted*, 271 F.R.D. 55 (S.D.N.Y. 2010) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary."). The duty to preserve evidence is ongoing. *See Zubulake*, 229 F.R.D. at 432-33. As such, potentially relevant evidence should not be sold, given away, or destroyed. *See R.F.M.A.S.*, 271 F.R.D. at 32.

District courts have not necessarily applied a uniform standard for determining whether it is necessary to issue a preservation order notwithstanding the above obligations. "Some courts have taken the position that a party seeking a preservation order must meet the standards for obtaining injunctive relief." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370 (S.D.N.Y. 2006) (collecting cases). Other courts have applied the three-pronged test outlined in *Capricorn Power Co. v. Siemens Westinghouse Corp.*, 220 F.R.D. 429, 433-34 (W.D. Pa. 2004), *see Treppel*, 233 F.R.D. at 370, and other courts have adopted a more streamlined analysis that simply "requires that one seeking a preservation order demonstrate that it is necessary and not unduly burdensome," *Pueblo of Laguna v. U.S.*, 60 Fed. Cl. 133, 138 (Ct. Cl. 2004). Recognizing this discrepancy, the *Treppel* court adopted a hybrid balancing analysis for determining the necessity of issuing preservation orders, based primarily on the factors outlined in *Capricorn Power*, which has since been applied by various district courts in this Circuit. *See, e.g.*, *Toussie v. Allstate Ins. Co.*, No. 15-CV-5235, 2018 WL 2766140, at *5-8 (E.D.N.Y. June 8, 2018); *In re Complaint of Specialist LLC*, 2016 WL 6884919, at *3 (S.D.N.Y. Nov. 22, 2016). Specifically, courts balance: (1) the danger of destruction absent a court order; (2) whether any irreparable harm is likely to result to the party seeking preservation in the absence of an order; and (3) the burden of preserving the evidence. *See Toussie*, 2018 WL 2766140 at *7.

8

Here, Plaintiff's counsel has not made a sufficient showing that relevant evidence, including the categories of materials listed in the Emergency Motion, is in danger of being destroyed, and indeed proffered no proof in support apart from somewhat speculative assertions that DOCCS personnel engaged in conduct prior to Mr. Hyers' death that raises spoliation concerns. *See* Dkt. No. 39-2 at 3; *see also, e.g., Tyler v. Peterson*, No. 20-cv-06196, 2022 WL 11629009, at *3 (E.D.N.Y. Oct. 20, 2022) (denying request for preservation order supported only by Plaintiff's belief that video footage was in danger of being deleted). Indeed, Plaintiff's counsel acknowledged at the February 4 hearing that they have not uncovered any evidence of spoliation. Defendants assured the Court in their opposition that Defendants are abiding by their "duty to preserve evidence relevant to this litigation," Dkt. No. 42-1 at ¶ 11, including by providing DOCCS and other applicable record custodians with a copy of the January 22 TRO and placing eDiscovery holds on the email accounts of individuals potentially relevant to the investigation into Plaintiff's death, *see id.* at ¶ 7, 9-10. While the Court does not condone defense counsel's nearly complete lack of knowledge as to the specifics of, *inter alia*, Defendants' preservation efforts, it is also true that Plaintiff's counsel has not yet made a sufficient effort to inquire into the specifics of those preservation efforts. Because neither Plaintiff's counsel nor Defendants' counsel could provide particulars with respect to preservation efforts beyond what is detailed in the papers, and considering that there is no evidence of any spoliation or likely spoliation, the Court finds that the first factor currently weighs against the issuance of a preservation order.

Regarding the remaining two factors, the Court notes that Plaintiff would almost certainly suffer irreparable harm should relevant evidence be altered or destroyed, but also considers that Plaintiff's counsel has not yet set forth allegations showing that such harm would be more likely

9

to occur without a court order. Plaintiff's counsel has similarly failed to state what burden, if any, Defendants would suffer from the issuance of a formal preservation order.

Therefore, at this juncture, the Court finds that the issuance of a preservation order is unwarranted.

To be clear, however, the Court agrees with Plaintiff's counsel that, at a minimum, the categories of evidence listed in the January 22 TRO are relevant to this action and that Defendants have a legal obligation to preserve such evidence. *Tchatat v. City of New York*, 795 Fed. Appx. 34, 36-37 (2d Cir. 2019) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.") (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). Especially considering Plaintiff's counsel's indication at the February 4 hearing that they intend to amend the operative complaint to include claim(s) concerning Mr. Hyers' death, Defendants are on notice that the types of documents described in the now-expired TRO are relevant and must be preserved. Should Plaintiff's counsel discover that Defendants have failed to comply with their preservation obligations, the Court "retains the power to sanction" Defendants even without a preservation order. *Id.* at *2 (citing *Goodyear Tire & Rubber Co.*, 167 F.3d at 779); *see also Treppel*, 233 F.R.D. at 372; *see also ComLab, Corp. v. Tire*, 815 Fed. Appx. 597, 600 (2d Cir. 2020) ("A party that fails to preserve evidence when it has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation, . . . is subject to sanction for spoliation.") (citations and quotations omitted).

Moreover, defense counsel is reminded of their ongoing duty to ensure that their clients are adequately complying with discovery obligations, including by safeguarding the preservation of relevant evidence. *See, e.g.*, *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods.,*

10

*Inc.*, No 1:19-cv-3766, 2020 WL 7342724, at *15 (S.D.N.Y. Dec. 11, 2020) ("attorneys have an obligation [to] understand their client's discovery protocol and to take reasonable steps to ensure compliance with discovery obligations") (citation omitted); *see also Zubulake*, 229 F.R.D. at 435; *Valentini v. Citigroup, Inc.*, No. 11-Civ-1355, 2013 WL 4407065, at *3 (S.D.N.Y. Aug. 16, 2013); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Restaurant Employees Int'l Union*, 212 F.R.D. 178, 222 (S.D.N.Y. 2003).  Counsel may not blindly accept assurances from their clients that the relevant evidence has been preserved; this is sanctionable conduct.  Therefore, should defense counsel fail to adequately oversee Defendants' preservation or production efforts, the Court will consider all remedial actions including sanctioning counsel.

### ii. Fed R. Civ. P. 53 Special Master

Second, the Emergency Motion seeks an order appointing a special master to oversee an independent investigation into Plaintiff's death, supervise compliance with court mandates, and ensure the preservation of evidence.  *See* Dkt. No. 39-2 at 3-4.

Fed. R. Civ. P. 53(a)(1)(B) provides in relevant part that a court may appoint a special master to "make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by some exceptional condition."  The Rule also provides that a court may appoint a special master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."  *See* Fed. R. Civ. P. 53(a)(1)(C).  This relief has traditionally been granted where a court finds circumstances warrant the need for supervision of a post-judgment injunction.  *See, e.g.*, *Local 28, Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 481-482 (1986); *U.S. Comm. Futures Trading Comm'n v. Deutsche Bank AG*, No. 16-Civ-6544, 2016 WL 6135664, at *2 (S.D.N.Y. Oct. 20, 2016) (quoting *United States v. Apple Inc.*, 992 F. Supp. 2d 263, 280 (S.D.N.Y. 2014), *aff'd*, 787 F.3d 131 (2d Cir. 2015))."  Nevertheless, and most notably, the Court's ability to appoint a special

master was limited by the passage of the Prisoner Litigation Reform Act ("PLRA"), which restricts the circumstances under which a federal court may award prospective relief, including pursuant to Rule 53. *See Webb v. Goord*, 340 F.3d 105, 111 (2d Cir. 2003) (affirming the denial of a request for a pretrial special master, holding that "[t]he mere assertion that the appointment of a special master is appropriate obviously does not meet [the PLRA's] strictures.").

Here, Plaintiff has not shown that exceptional conditions exist that would justify the appointment of a special master, nor has Plaintiff established that "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Notably, the Emergency Motion does not cite to, and the Court is unaware of, any cases issued after the adoption of the PLRA in which a federal court appointed a pretrial special master to investigate an individual inmate's death or supervise a prison official's compliance with discovery obligations. Putting aside the fact that the two out-of-circuit cases cited in the Emergency Motion pre-date the PLRA, the Court concludes that they are substantively inapposite. In *Hoptowit v. Ray*, a pattern and practice of brutality and harassment was established *at trial* showing that, in the two years preceding the appointment of a special master, eight inmates and two prison guards were killed in the same facility. 682 F.2d 1237, 1250 (9th Cir. 1982) (agreeing with a district court's decision to appoint a special master in order to monitor a prison's compliance with court orders following a bench trial). In *Williams v. Lane*, the Court cited to a record "replete with instances of administrative recalcitrance," including that the defendants failed to comply with a court order issued *posttrial*. 851 F.2d 867, 883-84 (7th Cir. 1988). While the Court acknowledges the unusual facts and procedural posture of this case, it is nonetheless distinguishable from the posture and facts of the cases upon which Plaintiff's counsel relies.

Moreover, Magistrate Judge Evangelista remains available to "effectively and timely address[]" any discovery disputes that may arise in this matter, including disputes pertaining to preservation. *See* Fed. R. Civ. P. 53(a)(1)(C).

Based on the foregoing, the portion of the Emergency Motion seeking the appointment of a special master is denied.

### iii. Fed. R. Civ. P. 25 Party Substitution

Finally, the Emergency Motion seeks leave to substitute Mr. Hyers with Deborah Nagel, who is Mr. Hyers' mother and the anticipated administratrix of his estate. Dkt. No. 39-2 at 7.

Fed. R. Civ. P. 25(a)(1) provides:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Under New York law, "to qualify as the 'representative' of the decedent's estate . . . the individual seeking substitution must have received letters to administer the estate of the decedent." *Bank of America, N.A. v. Puig*, No. 17-CV-3361, 2020 WL 13540961, at *3 (E.D.N.Y. Sept. 21, 2020). Where an individual has not yet been appointed administrator of the decedent's estate, they "cannot qualify as a 'representative.'" *Skolkin v. Shorefront Operating LLC*, No. 22-CV-7664, 2024 WL 2832846, at *2 (E.D.N.Y. June 4, 2024).

It is undisputed that Deborah Nagel has not yet been appointed administratrix of Mr. Hyers' estate. *See* Dkt. No. 39-1 at ¶ 14 (noting only that Ms. Nagel is "anticipated to be the administrator of his estate"). Therefore, she cannot be properly substituted as his representative at this time. At the February 4 hearing, Plaintiff's counsel indicated that they were in the process of obtaining the documents necessary to name Ms. Nagel as administratrix of Mr. Hyers' estate, and that they sought relief in the Emergency Motion only as a precautionary measure to avoid potential

13

procedural delays in the litigation. Given the timeframe already afforded to Plaintiff's counsel under Rule 25, the Court need not grant substitution on an emergency basis, especially prior to Ms. Nagel receiving letters of administration.[4] Counsel is directed to file a formal motion to substitute at the appropriate time.

Based on the foregoing, the portion of the Emergency Motion seeking an order substituting Plaintiff with Deborah Nagel is denied.

### B. Status Report & Handling of Subsequent Preservation Disputes

In light of the foregoing discussion concerning the preservation of evidence and Magistrate Judge Evangelista's availability to handle disputes regarding preservation and discovery more generally, the Court directs Defendants to file a status report with Magistrate Judge Evangelista within seven days of the date of this Memorandum-Decision and Order, which shall detail *with specificity* the nature of evidence that has been preserved, including, at a minimum, with respect to all categories of evidence outlined in the January 22 TRO. Defense counsel shall submit alongside the status report an affidavit from an individual or individuals with knowledge of all preservation efforts relevant to this litigation. The Court further directs counsel to confer within seven days of the filing of that status report and raise any disputes with Magistrate Judge Evangelista promptly thereafter. Any requests for extensions of any of the preceding deadlines will be denied.

## V. CONCLUSION

Accordingly, the Court hereby

---

[4] The Court notes that, to the extent that Plaintiff died destitute without any assets to be distributed, Ms. Nagel may choose to file a motion to substitute as Plaintiff's successor, as opposed to as an administrator of Plaintiff's estate, assuming Ms. Nagel would be a distributee of Plaintiff's estate if there was any property to distribute. *See Skolkin*, 2024 WL 2832846 at *2 (citing cases where motions to substitute were granted for successors); *see also* N.Y. E.P.T.L. § 4–1.1(a).

**ORDERS** that Plaintiff's emergency omnibus motion, Dkt. No. 39, is **DENIED**; and the Court further

**ORDERS** that the temporary restraining order, Dkt. No. 41, is **VACATED**; and the Court further

**ORDERS** that Defendants shall submit a status report and corresponding affidavit directed to Magistrate Judge Paul Evangelista **WITHIN SEVEN (7) DAYS** of the date of this Memorandum-Decision and Order, detailing with specificity the nature of evidence that has been preserved, including, at a minimum, with respect to all categories of evidence outlined in the January 22 TRO; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 5, 2025
Albany, New York

_____
Anne M. Nardacci
U.S. District Judge